**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA J. RANDBY,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA SCHOOL BOARD ASSOCIATION, INC.,<br><br>Defendant. | : | Civil No. 1:25-CV-01980<br><br><br><br><br><br><br><br>Judge Jennifer P. Wilson |

# MEMORANDUM

This case arises from an employment dispute between Plaintiff Linda J. Randby ("Randby"), and Defendant Pennsylvania School Board Association, Inc. ("Board"). Randby was employed as the Board's chief legal officer until the Board terminated her employment in May 2023. (Doc. 12, pp. 14, 61.) She now sues the Board alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation under the Americans with Disabilities Act ("ADA"), and discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA"). Presently before the court is the Board's motion to dismiss. Because Randby alleges sufficient facts to raise a reasonable expectation that discovery will reveal evidence of her claims, the court will deny the Board's motion.

## BACKGROUND[1]

### A. Randby's Employment at the Pennsylvania School Board Association

Randby is a woman who was formerly employed by the Board. (Doc. 1, ¶ 4.) The Board initially hired her in March 2020 as assistant chief legal officer, and promoted her to chief legal officer in February 2023. (*Id.* ¶ 14.) As chief legal officer, Randby reported to the Board's chief operating officer, Christy Griffiths, who in turn reported to the Board's chief executive director, Nathan Mains ("Mains"). (*Id.* ¶¶ 15–16.) Randby claims she performed all her duties well and was never disciplined or given an unsatisfactory performance evaluation. (*Id.* ¶¶ 19–20.)

Despite her seemingly satisfactory performance, Randby claims that Mains treated her worse than other employees. (*See id.* ¶¶ 20–39.) He allegedly treated her in a demeaning and condescending way and acted in an "angry, agitated, and hostile" manner toward Randby and other women. (*Id.* ¶¶ 22, 24.) Moreover, Mains would refer to female colleagues as "dramatic, overly sensitive, or too emotional, especially if a woman challenged him on an issue." (*Id.* ¶ 34.) Randby maintains that Mains did not treat her predecessor, a man, with similar disrespect

[1] The court draws these facts from the complaint, as it must on a motion to dismiss for failure to state a claim.

and that his actions emboldened other male employees to act in a similar manner. (*Id.* ¶ 32.)

Randby pushed back against this behavior on two occasions. (*Id.* ¶¶ 50, 55.) The first occasion related to Mains's treatment of women. (*See id.* ¶ 50.) Mains allegedly stated on several occasions that "he wanted to fire female employees because 'they always create problems at work.'" (*Id.* ¶ 35.) Randby claims that she informed him that this statement and his other conduct were "inappropriate." (*Id.* ¶ 50.)

The second occasion occurred following a discussion Randby had with Mains about implementing a wellness program. (*Id.* ¶ 51.) In April 2023, Randby spoke to Mains about a wellness program he wanted to implement, part of which "included participation in a workout program." (*Id.*) Randby told Mains that this program "could have the effect of discriminating against employees with disabilities who may be unable to participate in such a workout program." (*Id.* ¶ 52.) She asked him what he would do if such an employee sought an accommodation, and Mains responded that he would "fire them on the spot." (*Id.* ¶¶ 53–54.) In response, Randby again told Mains that his actions were "inappropriate" and recommended that he not implement the program "due to potential ADA violations and resulting impact in employee morale." (*Id.* ¶¶ 55, 58.)

Randby claims that Mains ignored her recommendation and implemented the wellness program anyway. (*Id.* ¶ 59.) Other employees began to raise concerns about the program, and, in response, Mains pushed the blame onto Randby. (*Id.* ¶ 60.) Following these events, Mains began to disengage with Randby professionally, rejecting her input and undermining her authority. (*Id.* ¶¶ 56–57.) This culminated in May 2023, when the Board terminated Randby's employment. (*Id.* ¶ 61.) In the termination letter, the Board wrote "We have chosen not to share the reasons for this [termination] decision. We want to spare you the experience of stating negative information that has been brought to our attention, regarding statements made by you at work and complaints made by others." (*Id.* ¶ 62.)

**B. Procedural History**

Randby filed her complaint alleging gender discrimination, gender retaliation, and disability retaliation under Title VII, the ADA, and the PHRA on October 21, 2025. (Doc. 1.) On January 12, 2026, the parties stipulated that Randby would file an amended complaint, and the court granted the stipulation the same day. (Docs. 10, 11.) Randby subsequently filed her amended complaint on January 23, 2026. (Doc. 12.) The Board responded by filing a motion to dismiss on February 6, 2026, and concurrently filed a brief in support. (Docs. 15, 16.) The Board then filed a motion to supplement its brief to append an unpublished opinion

on February 27, 2026, which the court granted on March 2, 2026. (Docs. 20, 21.) Randby filed her brief in opposition on March 5, 2026, and the Board filed its reply brief on March 18, 2026. (Docs. 25, 28.) The court has reviewed the motion to dismiss along with all supporting, opposing, and supplemental briefs. The Board's motion is thus ripe for resolution.

## JURISDICTION AND VENUE

The court has jurisdiction over Randby's Title VII and ADA claims pursuant to 28 U.S.C. § 1331 and over her state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

## DISCUSSION

The Board asks the court to dismiss each count in Randby's amended complaint. Starting with Randby's gender discrimination claims, the Board argues the complaint fails to allege facts giving rise to an inference of discrimination. (Doc. 16, p. 13.)[2] Then, as to Randby's retaliation claims, the Board argues that she failed to allege a protected activity and causal connection under both her gender and disability retaliation theories. (*Id.* at 17–24.) Finally, the Board argues that Randby failed to exhaust administrative remedies with respect to portions of her amended complaint and that the court thus cannot consider those portions of the complaint. (*Id.* at 26.) The court begins with the exhaustion argument to establish the scope of allegations properly before the court, then addresses each of the Board's arguments in turn.[3]

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF headers.

[3] Count IV of Randby's amended complaint alleges parallel claims under the PHRA. (Doc. 12, pp. 25–26.) PHRA claims fall under the same analytical framework as Title VII and ADA claims, so the court does not analyze count IV separately. *See Qing Qin v. Vertex, Inc.*, 100 F.4th 458, 470 (3d Cir. 2024); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

### A. Randby Exhausted Administrative Remedies, so her Amended Complaint is Properly Before the Court.

Randby's amended complaint is properly before the court. Title VII, the ADA, and the PHRA all require plaintiffs to exhaust their administrative remedies prior to filing suit. *See* 42 U.S.C. § 2000e-5; 42 U.S.C. § 12117(a); 43 Pa. Stat. § 962(c). This requirement conserves judicial resources by ensuring the U.S. Equal Employment Opportunity Commission ("EEOC") has "the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary court action." *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). Considering that purpose, a subsequent lawsuit in district court is limited to claims "within the scope of the initial administrative charge" or that can "reasonably be expected to grow out of the charge of discrimination." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x. 411, 414 (3d Cir. 2010) (citing *Antol*, 82 F.3d at 1296 then quoting *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 66 (3d Cir. 1978)).

The Board urges the court to take a narrow view of the administrative charge's scope. The Board states broadly that "claims of alleged disparate treatment, patterns and practice discrimination, and references to Mr. Smeltzer, were never alleged in the formal EEOC complaint." (Doc. 16, p. 28.) Although it does not cite the portions of the amended complaint that Randby failed to exhaust, the Board seems to be challenging specific factual allegations rather than entire counts. (*See id.* at 27–28 (arguing that Randby's administrative complaint did not

allege (1) that she was terminated while male employees were not; (2) "systematic termination of women in management"; or (3) "[s]pecific comparator misconduct theories").) The Board contends that these claims were not exhausted and therefore are not properly before the court. (*Id.* at 28.)

The court disagrees. These allegations all directly relate to or would have reasonably been included in an investigation of the administrative charge. Randby alleged hostile work environment, gender discrimination, and retaliation in the administrative complaint. (Doc. 16-2, ¶¶ 33–71.) The amended complaint then narrowed the scope of the administrative complaint rather than expanding upon it; it dropped the count for hostile work environment and alleged only gender discrimination and retaliation. (Doc. 12, ¶¶ 71–141.) Further, contrary to the Board's contentions, the administrative complaint alleges facts directly related to the pleadings that the Board claims are not properly before the court. The administrative complaint alleges, among other things, that Randby was treated "unprofessionally and with disrespect and disdain as compared to . . . similarly situated males," that Mains told Randby "that he wanted to fire female employees because 'they always create problems at work,'" and that she was "treated more harshly than similarly situated males." (Doc. 25-1, ¶¶ 10. e., 16, 55.) A reasonable investigation of these allegations would involve examining whether male employees had their employment terminated for similar conduct, the identities of

the similarly situated male employees, and whether female employees systematically had their employment terminated—exactly the charges the Board claims are beyond the scope of the administrative complaint.

Essentially, the question is not whether the administrative charge and complaint are identical, but rather "whether the allegations in the judicial complaint are reasonably related to those in the administrative charge." *Kopko v. Lehigh Valley Health Network*, 776 F. App'x. 768, 773 (3d Cir. 2019). For the reasons explained, the allegations in this case satisfy this requirement. Accordingly, the court considers the entirety of Randby's amended complaint in its analysis.

**B. Motion to Dismiss Standard for Discrimination and Retaliation**

The parties primarily dispute whether Randby has met her burden of alleging a prima facie case under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework.[4] (Doc. 16, p. 13; Doc. 25, p. 13.) Under this framework, a plaintiff does not need to establish a prima facie case of discrimination to defeat a motion to dismiss. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Instead, a

[4] Randby is not required "to choose whether she is proceeding under a mixed-motive or pretext theory, nor is she required to establish a prima facie case" or engage in *McDonnell Douglas* burden shifting at this stage. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016). However, the parties have framed their arguments around the elements of a prima facie case, so the court follows suit.

plaintiff "need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez*, 986 F.3d at 266 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). The court analyzes whether Randby has done so for each of her claims.

**1. Randby Sufficiently Alleged Gender Discrimination Under Title VII and the PHRA in Counts I and IV.**

Randby alleged enough facts to raise a reasonable expectation that discovery will reveal evidence of a prima facie case of gender discrimination. To establish a prima facie case of gender discrimination a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) that she suffered an adverse employment action; and (4) the adverse employment action gives rise to an inference of unlawful discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417 (3d Cir. 2013). The Board argues Randby failed to plead facts sufficient to support the fourth element. (Doc. 16, p. 13.) Primarily, the Board argues that Randby's complaint is nearly entirely conclusory statements that the court must disregard. (*Id.* at 7–9.) Indeed, it contends that only six allegations in the entire complaint are factual allegations relating to discrimination. (*Id.* at 7–8.)

An allegation is really a legal conclusion, and thus not entitled to a presumption of truth, when it resembles a "'formulaic recitation of the elements of a . . . claim' or other legal conclusion." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789–90 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 681). Some of the

allegations in Randby's amended complaint do fall into this category. For example, Randby alleges that (1) "Plaintiff's gender was a substantial motivating factor in Defendant's decision to terminate employment," (2) "Mains did act with the intention to discriminate against Plaintiff," (3) "Mains subjected Plaintiff to discrimination and disparate treatment," and (4) "[t]he termination of Plaintiff's employment constitutes adverse employment action." (Doc. 12, ¶¶ 78, 74, 21, 67.) These allegations all "paraphrase in one way or another the pertinent statutory language or elements of the claims in question," so the court disregards them in its analysis. *See Connelly*, 809 F.3d at 790.

But even setting aside those and other similar allegations, the remaining allegations in the complaint are sufficient to survive the motion to dismiss. The amended complaint contains numerous, nonconclusory comparisons of how Mains treated men compared to women. (Doc. 12, ¶¶ 22–32, 34, 36, 38–40.) Randby also alleges that Mains told her "that he wanted to fire female employees because 'they always create problems at work.'" (*Id.* ¶ 35.) Accepting these allegations as true and construing them in the light most favorable to Randby, they give rise to a reasonable inference that discovery will reveal evidence of unlawful discrimination. Nothing more is needed at this stage.

In short, Randby's alleged facts raise a reasonable expectation that she will be able to establish a prima facie case. That is enough to get to discovery.

Accordingly, the court will deny the Board's motion to dismiss Randby's gender discrimination claims.

**2. Randby Sufficiently Alleged Retaliation Under Title VII and the PHRA in Counts II and IV.**

Randby's amended complaint also states enough facts to defeat the motion to dismiss her retaliation claim. To state a prima facie case of retaliation a plaintiff must allege: (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; (3) that there was a causal connection between the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995). As with her discrimination claim, Randy only needs to establish an inference that she will be able to meet this burden following discovery. *See Martinez*, 986 F.3d at 266. The Board argues that Randby failed to establish that inference with respect to her protected activity and causal connection. (Doc. 16, pp. 17, 21.)

The Board contends that the only protected activity Randby pleaded was that she told Mains that his conduct was "inappropriate." (Doc. 16, p. 18.) Further, it argues that Randby pleaded no facts to establish that the Board's stated reason for terminating her employment was pretextual. (Doc. 28, pp. 17–18.) Neither argument is convincing. As already discussed, Randby does not need to prove pretext or even a prima facie case at this stage. *Martinez*, 986 F.3d at 266. She

only needs to raise a reasonable inference that she will be able to establish a protected activity post-discovery. *Id.* She established that inference through the combination of pleading that she told Mains his conduct was inappropriate and the broader context of her complaint.

Title VII's opposition clause makes it "unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by this title." 42 U.S.C. § 2000-e3(a). Someone can "oppose" discrimination under this clause even if she has "taken no action at all to advance a position beyond disclosing it." *Crawford v. Metro Gov't of Nashville & Davidson County*, 555 U.S. 271, 277 (2009). A plaintiff's opposition, therefore, does not need to be "active" or "consistent" to constitute a protected activity under the opposition clause. *See id.*

Randby's pleadings meet this standard. She pleaded that she told "Mains that his conduct was, among other things, 'inappropriate.'" (Doc. 12, ¶ 50.) This pleading follows a series of pleadings that allege various forms of gender discrimination and disparate treatment on the basis on gender. (*Id.* ¶¶ 21–49.) Taking these statements in context, and in the light most favorable to Randby, they are enough to raise an inference that she disclosed her position opposing gender discrimination to her employer.

Similarly, Randby pleaded sufficient facts to raise an inference that discovery will reveal an inference of causal connection. The Board argues that Randby "provides no date, no context, and no factual allegations" to establish a causal connection. (Doc. 16, p. 21.) But in employment discrimination cases, "a plaintiff may rely on a broad array of evidence to" establish a causal connection between the protected conduct and the adverse employment action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir 2000). Here, Randby pleaded that Mains specifically told her "that he wanted to fire female employees because 'they always create problems at work'". (Doc. 12, ¶ 35.) Additionally, Randby alleged that the Board gave no formal reason for her employment termination. (*Id.* ¶ 62.) At the motion to dismiss stage, these allegations raise a reasonable inference that the cause of her termination was that she was a female employee who created problems by telling Mains that his conduct was inappropriate.

Randby has thus alleged facts sufficient to support an inference that discovery will reveal evidence of her Title VII retaliation claim. Accordingly, the Board's motion to dismiss will be denied with respect to this count.

**3. Randby Sufficiently Alleged Retaliation Under the ADA and the PHRA in Counts III and IV.**

Finally, Randby's amended complaint is sufficient to support her ADA retaliation claim for the same reasons it is sufficient to support her Title VII retaliation claim. The elements of a prima facie ADA retaliation claim are the

same as those for a gender retaliation claim. *Steidle v. U.S. Liab. Ins. Co.*, 179 F.4th 193, 205 (3d Cir. 2026). Here, too, it is sufficient for Randby to raise a reasonable inference that discovery will produce evidence to support a prima facie case. *Martinez*, 986 F.3d at 266.

Randby's amended complaint meets this requirement. The amended complaint describes a conversation she had with Mains in which she told him that a wellness program "could have the effect of discriminating against employees with disabilities who may be unable to participate in such a workout program." (Doc. 12, ¶ 52.) In response, she alleges that Mains said he would "fire [an employee] on the spot" if an employee with a disability sought an accommodation. (*Id.* ¶¶ 53-54.) Randby then allegedly told Mains that this was "inappropriate" and recommended that "Defendant not implement the Wellness Program due to potential ADA violations." (*Id.* ¶¶ 55, 58.) Randby claims that after this conversation Mains began "refusing to engage with her professionally"; and, when he chose to implement the wellness program anyway, that he blamed her for employee concerns about the program. (*Id.* ¶¶ 56, 58–60.)

As with Randby's Title VII retaliation claim, the inference at this stage is that the Board terminated Randby's employment because she voiced opposition to an act that she believed violated the ADA. Discovery will show whether these

allegations have merit. Accordingly, the court will deny the Board's motion to dismiss Randby's ADA retaliation claim.

## CONCLUSION

For the foregoing reasons, the court will deny the Board's motion to dismiss. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: November 10, 2026